# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0084, <u>Albert S. Brandano v. Superintendent of New Hampshire School Administrative Unit 16 & a.</u>, the court on November 3, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The plaintiff, Albert S. Brandano, appeals an order of the Superior Court (<u>Ruoff</u>, J.) dismissing his complaint under the Right-to-Know Law, RSA chapter 91-A (2023). We affirm in part, reverse in part, and remand.

## I.  Background

The following facts either were found by the trial court or reflect the content of documents in the appellate record. On July 4, 2021, the plaintiff sent a Right-to-Know Law request to defendant Superintendent David Ryan, in his capacity as Superintendent of New Hampshire School Administrative Unit 16 (SAU 16), requesting the following documents relating to Diversity, Equity, Inclusion and Justice (DEIJ) committees and activities between July 1, 2019 and June 30, 2021 "in SAU16 or any School District in SAU16."

   a. Request No 1:  All charters, member lists, or other records establishing or setting out the purposes, goals, or objectives of all DEIJ Committees;

   b. Request No 2:  All postings, agendas, materials distributed to committee members, presentations, work products, videos, chat logs, and minutes, for all meetings of all DEIJ Committees;

   c. Request No 3:  All emails or other written communications, between any DEIJ Committee Chairperson or other group leader or facilitator, and any SAU16 Officer, concerning a DEIJ Committee or DEIJ Activity;

   d. Request No 4:  All records of any DEIJ Activity of any School Board or Committee of a School Board. Such records include but are not limited to postings, agendas, materials distributed to members, presentations, work products, videos, chat logs, and minutes;

e.  Request No 5:  All records of any DEIJ Activity of any SAU16 Officer;

f.  Request No 6:  All contracts, agreements, or grant applications that, in whole or in part, concern a DEIJ Committee or seek to enable DEIJ Activity;

g.  Request No 7:  All records of expenses incurred in support of a DEIJ Committee or DEIJ Activity, and the budgets from which they were paid or will be paid; and

h.  Request No 8:  All records of any DEIJ-Activity-related curriculum materials, for example books, that were distributed, assigned, recommended, or suggested to any SAU16 teachers or students.

Ryan emailed the plaintiff on July 7, 2021, acknowledging receipt of the requests, explaining that most of the information the plaintiff sought was available on the SAU 16 website, and indicating that SAU 16 would need an additional five days to respond to Request Nos. 6 and 7, and an additional 45 days to respond to Request No. 3.  Ryan emailed the plaintiff again on July 16, 2021, attaching documents responsive to Request Nos. 6 and 7 and indicating that budget information for the DEIJ position could be found on the SAU 16 website.  In the same email, Ryan indicated that he still intended to provide documents responsive to Request No. 3 within "the 45 days previously indicated."

On August 16, 2021, the plaintiff emailed Ryan and, among other things, informed him that he believed that SAU 16 had not provided certain documents responsive to his requests because he had obtained responsive documents from other sources.  He provided specific examples of documents that he believed were responsive to his requests but which had not been provided by Ryan.  Ryan did not respond to the email.

On August 23, 2021, the plaintiff again emailed Ryan and others.  In the email, titled, "SAU 16 – **RIGHT TO KNOW** 91A's – July 4, 2021 – Notice of Delinquency," the plaintiff reminded Ryan of the 45-day deadline to respond to Request No. 3 and of his August 16 email.

On August 27, 2021 the plaintiff again emailed Ryan and others, stating:

> **Public notice**
> REF:  Notice of Delinquency Aug 23, 2021
> Superintendent Ryan you are now in Violation of Section 91-A:4.
> Your inaction as well as violation of the spirit of the law for full disclosure, leaves me no other option than to proceed under NH

State Law; 91-A:7 Violation and 91-A:8 Remedies.

On September 28, 2021, the plaintiff filed a Right-to-Know Law complaint requesting that the court order Ryan and SAU 16 to immediately produce the information he had requested, and to award him attorney's fees and costs.

On October 14, 2021, Ryan sent an email to the plaintiff stating:

Please find attached three invoices, which we have requested and obtained from the following schools and districts: Newfields School District, East Kingston Elementary School, Kensington Elementary School, and Swasey Central School. The SAU neither contracted with, nor paid for the services provided by, 2revolutions. We have been informed by the schools that there do not exist any written contracts relating to these invoices or 2revolutions. These documents are being produced to you as a courtesy. Although they may be "governmental records" of entities other than the SAU, they are not within the scope of the SAU's obligations under RSA 91-A.

On October 18, 2021, the defendants filed a verified motion to dismiss, to which the plaintiff objected. A hearing was held on October 20, 2021. The defendants had not yet produced any documents in response to Request No. 3 as of the date of the hearing. Nevertheless, the trial court granted the motion to dismiss on December 9, 2021, stating, in relevant part:

[T]he Court provisionally **GRANTS** Defendants' motion to dismiss pending Defendants' production of documents, in their possession, responsive to Plaintiff's Request No. 3 within 45-days of the Clerk's Notice of Decision accompanying this Order. If Defendants comply with this deadline, the instant action will be dismissed. Should Defendants fail to comply with the deadline, the Court will be open to rehearing argument related to the costs and fees related to securing such documents.

The clerk's written notice of decision was dated December 9, 2021. The plaintiff filed a motion to reconsider, which the trial court denied on January 14, 2022.

The defendants provided additional documents to the plaintiff on December 16, 2021. Ryan sent an email to the plaintiff which read, in part:

In response to your July 4, 2021 RSA 91-A request, specifically #3, we have searched the SAU 16 email accounts of all SAU 16

3

officers and any other relevant individuals and are providing you with all emails during the time period identified which constitute "governmental records" as defined in RSA 91-A:1-a, III.

Attached to the email were ten PDF files containing emails in which some personal identities had been redacted that were responsive to Request No. 3. On January 20, 2022, Ryan emailed the plaintiff and informed him that SAU 16 had provided all responsive documents regarding Request No. 3, and that he had personally checked to ensure that all of the responsive documents had been provided.

On January 24, 2022, the plaintiff filed a verified motion to compel. On February 14, 2022, the plaintiff appealed the order granting the motion to dismiss. The trial court denied the motion to compel on February 28, 2022. The plaintiff did not separately appeal the trial court's order on the motion to compel, but argues in his brief that the trial court erred in denying the relief he requested in the motion. Accordingly, at issue in this appeal are whether the trial court erred when it: (1) provisionally granted the defendants' motion to dismiss; (2) denied the plaintiff's motion to compel; and (3) denied the plaintiff's request for attorney's fees.

II.    Analysis

The Right-to-Know Law ensures "both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people." RSA 91-A:1. To effectuate this purpose, the law guarantees "[e]very citizen . . . the right to inspect . . . and to copy" all governmental records, with limited exceptions. RSA 91-A:4, I; see RSA 91-A:5. In reviewing trial court orders in Right-to-Know Law cases, we defer to the trial court's findings of fact if they are supported by the evidence and are not erroneous as a matter of law, and review the trial court's interpretation of the Right-to-Know Law de novo. Provenza v. Town of Canaan, 175 N.H. 121, 124 (2022).

A. Defendants' Motion to Dismiss

The defendants moved to dismiss the plaintiff's Right-to-Know Law complaint, arguing that: (1) most of the requested documents do not fall within the definition of "governmental records"; (2) the defendants are the wrong parties because the documents sought are in the possession of the individual school districts, and not SAU 16; and (3) they have produced all of the responsive documents. The trial court assumed without deciding that the requested records fell within the definition of "governmental records," but found that the defendants were obligated to turn over only documents in their possession, not documents in the possession of individual school districts, and that the defendants' search for responsive documents was

4

reasonably calculated to discover the requested documents. Regarding the documents responsive to Request No. 3, the trial court stated:

> Defendants acknowledge that they have yet to fulfill Plaintiff's Request No. 3 and represent that they are working diligently to produce responsive documents. The Court accepts this representation; however, in the interest of compliance with the spirit of the Right-to-Know law, see RSA 91-A:1—and a mindfulness of the strain that the Covid pandemic restrictions in schools, coupled with the holiday season, can have on the public school system—Defendants have 45-days to produce the documents, in their possession, responsive to Plaintiff's Request No. 3.

The plaintiff argues that the trial court erred "in absolving SAU 16 from searching for and producing responsive documents in the possession of individual school districts." The defendants argue that the trial court correctly concluded that because SAU 16 is a separate legal entity from the seven individual school districts that are members of SAU 16, the Right-to-Know Law requires SAU 16 to turn over only those responsive documents that are in SAU 16's possession, and that it was not obligated to search for, and turn over, records that were in the possession of the individual districts.

Because resolution of this issue requires an interpretation of the Right-to-Know Law, our review is de novo. Provenza, 175 N.H. at 124. When interpreting the Right-to-Know Law, we apply our ordinary rules of statutory interpretation. Union Leader Corp. v. Town of Salem, 173 N.H. 345, 350 (2020). We look first to the language of the statute itself, and if possible, construe that language according to its plain and ordinary meaning. Anderson v. Robitaille, 172 N.H. 20, 22 (2019). We give effect to every word of a statute whenever possible and will not consider what the legislature did not see fit to include. In re J.P., 173 N.H. 453, 460 (2020).

The Right-to-Know Law requires a "public body or agency" to make governmental records "within its files" available upon request. RSA 91-A:4, IV(a). The statute defines "[p]ublic agency" as "any agency, authority, department, or office of the state or of any county, town, municipal corporation, school district, school administrative unit, chartered public school, or other political subdivision." RSA 91-A:1-a, V. By its plain language, the statute identifies a school district as a public agency separate from a school administrative unit. Compare RSA ch. 194 (2018 & Supp. 2022) ("School Districts"), with RSA ch. 194-C (2008 & Supp. 2022) ("School Administrative Units"); see RSA 194:1 ("Each town shall constitute a single district for school purposes); RSA 194-C:2 (Supp. 2022) (setting forth process to establish, join or withdraw from a school administrative unit).

5

Given the distinction created by the legislature, we affirm the trial court's determination that a "school district" and a "school administrative unit" are separate public agencies within the meaning of the Right-to-Know Law.

The Right-to-Know Law states that "[e]ach public body or agency shall keep and maintain all governmental records in its custody." RSA 91-A:4, III. "Governmental records" means

> [a]ny information created, accepted, or obtained by, or on behalf of, any public body, or a quorum or majority thereof, or any public agency in furtherance of its official function. Without limiting the foregoing, the term "governmental records" includes any written communication or other information, whether in paper, electronic, or other physical form, received by a quorum or majority of a public body in furtherance of its official function, whether at a meeting or outside a meeting of the body. The term "governmental records" shall also include the term "public records."

RSA 91-A:1-a, III. Accordingly, each individual school district is required by RSA 91-A:4, III to keep and maintain documents relating to its official function, and SAU 16 is required to keep and maintain documents relating to its official function.

We disagree with the plaintiff that Ryan had a responsibility to search for and produce responsive documents that were in the possession of individual school districts, which the legislature has identified as independent public agencies for purposes of the Right-to-Know Law. Our interpretation of the statute is consistent with at least one court interpreting the federal Freedom of Information Act, see Prado v. Ilchert, No. C-95-1497 MPH, 1997 WL 383239 at *3 (N.D. Cal. June 10, 1997) (dismissing Freedom of Information Act complaint because "[t]hough the INS and EOIR are closely related in the organization of the DOJ, they are clearly distinct agencies"), and the plaintiff cites no authority for the proposition that an agency is responsible for collecting, maintaining, and producing the records of another associated agency.

To the extent that the plaintiff challenges the finding that the defendants failed to conduct a reasonable search for documents responsive to Request Nos. 1, 2, 4, 5, 6, 7, and 8, we disagree. To determine whether a search for documents was legally adequate, we follow the standard applied under the federal Freedom of Information Act. See ATV Watch v. N.H. Dep't of Transp., 161 N.H. 746, 753 (2011). The "issue is not whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested documents." Id. The "agency must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." Id. (quotation omitted). An

6

agency can meet this burden "by producing affidavits that are relatively detailed, nonconclusory, and submitted in good faith." Id. (quotation omitted).

Although the defendants did not submit an affidavit in this case, their motion to dismiss was verified by Ryan. It was therefore appropriate for the trial court to accord the same weight to the assertions made in the motion as if they had been included in an affidavit submitted by Ryan. Cf. Vette v. K-9 Unit Deputy Sanders, 989 F.3d 1154, 1163 (10th Cir. 2021) (verified complaint may be treated as an affidavit for purposes of summary judgment if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury). According to the verified motion,

> [Defendants] have provided [plaintiff] with all documents that are within the scope of the SAU's obligations under RSA 91-A. And [defendants] have gone further. They have requested and obtained additional documents from individual districts and individual school boards—each their own separate public agency and body, respectively—and have produced to [plaintiff] such additional documents, despite not being required under RSA 91-A to do so. The SAU also intends to produce numerous emails that do not constitute "governmental records."

> . . . [Defendants] have devoted significant time to responding to [plaintiff's] broad requests and lengthy emails, despite, in large part, having no obligation to do so under RSA 91-A. [Defendants] did so in addition to the day-to-day administration of a massive SAU, which includes seven individual school districts, twelve individual schools, and a 32-member joint Board to which the Superintendent reports. [Defendants] did so in addition to the added responsibilities incurred as a result of a global pandemic. And, at the time, the Superintendent was addressing more than five Right to Know law requests. The SAU continues to dedicate significant time, reviewing two years-worth of emails that are unlikely to fall within the scope of its RSA 91-A obligations but which the SAU intends to produce.

Ryan was present at the hearing on the motion to dismiss. At the hearing, counsel for the defendants described the defendants' search for responsive records as follows:

> So what the SAU did here was it took these requests, which were narrow requests. Which is nice because a lot of public agencies are receiving extremely broad requests. Took these specific requests, looked at the records that they maintained, conducted that search. It took them 30 hours, five different people.

And it's continuing to take them additional time as they produce voluntarily materials that they don't maintain that are in SAU records. But it took them 30 hours to respond to these requests. And what came up was the records that existed within that scope, plus additional records that existed within the scope of other agencies' right to know law maintenance duties.

We conclude from our review of the record that the defendants demonstrated, beyond material doubt, that, as of the date of the hearing, they conducted a search reasonably calculated to uncover all relevant documents, and that they had produced those records, except those records identified in Request No. 3. We understand the plaintiff to argue on appeal that the search was not reasonably calculated to uncover all relevant documents because: (1) the defendants failed to produce a contract with 2Revolutions, a consulting firm, that had been provided in response to a Right-to-Know Law request made by another Right-to-Know Law requester; and (2) the defendants' descriptions of the search were conclusory and lacked sufficient detail, and the defendants failed to disclose the methodology to the plaintiff.

Regarding the 2Revolutions contract, the plaintiff argues that the defendants' search of records should have, but did not, result in the disclosure of a contract between the SAU and 2Revolutions, as well as 2Revolutions invoices. According to the plaintiff, another Right-to-Know Law requester was provided with a copy of a contract between 2Revolutions and the SAU that had not been provided to him. But the defendants' verified objection to the motion to reconsider stated that the other requester's request was for 2Revolutions documents generally, a fact that the plaintiff does not dispute. By contrast, the plaintiff's Right-to-Know Law requests inquired only about DEIJ materials. The contract that was provided to the other requester reflects that 2Revolutions was providing services to the SAU unrelated to DEIJ initiatives, and, therefore, the contract was not responsive to the plaintiff's Right-to-Know Law requests. The invoices produced in response to the other requester's request related to DEIJ services provided by 2Revolutions to individual school districts, and were, therefore records maintained by the school districts.

Regarding the plaintiff's argument that the defendants' descriptions of the search were conclusory and lacked sufficient detail, we agree with the defendants that our decision in ATV Watch is instructive. ATV Watch, 161 N.H. at 753-54. There were no sworn assertions in ATV Watch. Id. The only statements made in support of the reasonableness of the search were made by counsel for the State, who stated:

I'm not sure if [plaintiff] is saying that there were some documents that

he should have gotten that he didn't get. Without a specific allegation of some document that exists, . . . all I can do is represent to the Court that the DOT went through its files and was very thorough. As far as I know, there's no other document out there that was not gathered in its search.

. . . .

The DOT properly gave the scope of its search to its employees. The DOT knows what documents it has and who it should refer that to.

. . . the DOT knows who's involved in this issue, how long the issue's been going on, and they—they did a reasonable search of their records.

Id. With respect to these statements, we noted that "[w]hile counsel's representations are conclusory and not particularly detailed, the State had witnesses at the hearing who were presumably prepared to testify." Id. at 754. We also noted that the plaintiffs "did not object to the procedure or seek to examine the State's witnesses." Id.

The defendants' representations in this case were far more detailed. Furthermore, the plaintiff did not challenge those assertions and did not ask the defendants about their specific search methodologies, and did not seek to examine Ryan. Instead, the plaintiff suggested that the court order a third party vendor to conduct the search, arguing, in part, that the defendants' alleged failure to produce a document – the 2Revolutions contract – justified such relief. Only after he filed his motion to reconsider the order on the motion to dismiss did the plaintiff argue that the scope of the defendants' search was not reasonable, inquiring, "Where did they search? How did they search?" Following our review of the record, we conclude that the trial court did not err when it concluded that the defendants had met their burden to show that their search was reasonable, and that the plaintiff failed to rebut this by showing that the search was unreasonable or not conducted in good faith. Id. at 753.

B. Plaintiff's Motion to Compel

The trial court's December 9, 2021 order provisionally granting the defendants' motion to dismiss stated that the action would be dismissed if the defendants produced documents responsive to Request No. 3 within 45 days of the notice of decision accompanying the order. On December 16, 2021, Ryan sent an email to the plaintiff attaching ten PDF files containing emails in which some personal identities had been redacted. On January 20, 2022, Ryan emailed the plaintiff and informed him that the SAU had provided all responsive documents regarding Request No. 3.

9

On January 24, 2022, the plaintiff filed a verified motion to compel, requesting that the court compel the defendants to disclose "344 missing email pages," as well as the "documents and information contained in those emails," and requesting costs and attorney's fees. The defendants objected and the trial court denied the motion in a margin order on February 28, 2022, stating: "Upon review of the prior order, all related pleadings and the SAU's objection, the Motion is Denied. The Court concurs with all but one of the arguments and conclusions of the SAU. Thus, the Motion is DENIED. The Court does not find that this pleading implicates RSA 91-A:8, II."

The defendants' verified objection to the motion to compel (referred to in the trial court's order as the "SAU objection") states, in part:

> To be very clear: [Defendants] have fully complied with their obligations under RSA 91-A and as further clarified in this Court's December 9, 2021 Order. [Defendants] have produced all emails and documents that pertain to a function of the SAU and are in the SAU's possession. [Defendants] went further and even produced emails to which a SAU officer was copied for whatever reason by the sender, even though those emails did not pertain to any SAU function. This was the product of broad search criteria—involving numerous emails sent to or from both SAU officers as well as individuals associated with DEIJ efforts in individual districts or schools that relate to any matters of DEIJ, DEI, or diversity—designed to decrease the response time to [plaintiff's] request and attempt to avoid unnecessary litigation. [Defendants] have further provided, as this Court recognized in its Order, documents that were not in the SAU's possession and which did not pertain to a SAU function. With respect to the email production responsive to [plaintiff's] Request #3, [defendants] produced all emails responsive to that request. As noted in [defendants'] Objection to [plaintiff's] Motion for Reconsideration, at 11, n.9, much of the information and many of the documents referenced in those emails had already been produced to [plaintiff] via link to the SAU's public website. Additional documents were available via live links in the email production.

Regarding redactions, the verified objection noted that Request No. 3 was for emails and communications "between any DEIJ committee Chairperson or other group leader or facilitat[or] and any SAU16 Officer," and that the defendants had "redacted names of individuals who did not fall within that request, who did not serve any official SAU function, and whose privacy interests were implicated under RSA 91-A:5, IV, including "parents, vendors,

and similar individuals who did not meet [plaintiff's] definition of 'SAU Officer' and who are not employees of any school district or SAU office." (Quotation and emphases omitted.) Finally, regarding the missing pages, the defendants noted that they removed advertisements and "junk mail," and messages entirely unrelated to the plaintiff's request. Even if we were to assume that, despite the plaintiff's failure to appeal the trial court's order denying his motion to compel, these issues are properly before us, we conclude, based upon our review of the record on appeal, that the trial court did not err in denying the motion.

Regarding the 344 pages that were allegedly missing from the production, we cannot conclude that the trial court erred in accepting the representation made in the defendants' verified objection that the missing pages included advertisements and "junk mail" and messages entirely unrelated to the plaintiff's request. Regarding the documents attached or linked to the emails that were not produced, we have reviewed each of the emails and conclude that the attachments to which the emails refer did not pertain to an SAU function, were not in the SAU's possession, and/or were already publicly available. Cf. Triestman v. U.S. Dept. of Justice, Drug Enfor., 878 F. Supp. 667, 671 (S.D.N.Y. 1995) ("[T]o require an agency to collect and produce information that has already been made public would not further the general purpose of FOIA, which is to satisfy the citizens' right to know what their government is up to" and "FOIA does not obligate an agency to serve as a research service for persons seeking information that is readily available to the public." (quotation omitted)). Regarding defendants' redaction of the names of certain individuals, we have reviewed the documents and conclude that the redactions were appropriate for the reasons stated in the defendants' verified objection to the motion to compel.

### C. Plaintiff's Request for Attorney's Fees

In denying the plaintiff's request for attorney's fees, the trial court found that the defendants "did not 'knowingly' violate the Right-to-Know Law and that their search for responsive documents was adequate and reasonable under the circumstances." Based on this finding, the trial court stated that it was unable to find that "the instant action was 'necessary in order to enforce compliance with the provisions' of the Right-to-Know law." See RSA 91-A:8, I. Regarding the fact that the defendants produced certain documents only after the Right-to-Know Law complaint was filed, the trial court stated: "Because Defendants did not have a legal obligation to turn over documents in the possession of individual school districts, the fact that some documents—which were in possession of individual school districts and schools . . . were turned over after Plaintiff initiated the instant action does not render their search unreasonable." The trial court order did not specifically address the question of whether the defendants' failure to meet their self-imposed deadline on the production of responses to Request No. 3,

or their failure to respond to the plaintiff's further inquiries about Request No. 3, violated the Right-to-Know Law.

The plaintiff argues on appeal that the "complete lack of response to Request No. 3 from July to December 16, 2021 is a clear violation of the response deadline set forth in RSA 91-A:4, IV," and, therefore, the trial court erred when it denied the plaintiff's request for attorney's fees.  RSA 91-A:8, I, provides:

> If any public body or public agency or officer, employee, or other official thereof, violates any provisions of this chapter, such public body or public agency shall be liable for reasonable attorney's fees and costs incurred in a lawsuit under this chapter, provided that the court finds that such lawsuit was necessary in order to enforce compliance with the provisions of this chapter or to address a purposeful violation of this chapter. Fees shall not be awarded unless the court finds that the public body, public agency, or person knew or should have known that the conduct engaged in was in violation of this chapter or if the parties, by agreement, provide that no such fees shall be paid.

Accordingly, an award of attorney's fees shall be made pursuant to 91-A:8, I, if the Right-to-Know Law is violated and: (1) the lawsuit was necessary to make public information available; and (2) the body, agency, or person knew or should have known that the conduct engaged in was a violation of RSA chapter 91-A.  See WMUR Channel Nine v. N.H. Dep't of Fish & Game, 154 N.H. 46, 50 (2006).

RSA 91-A:4, IV(a) mandates that an agency make governmental records available "immediately," but the statute also sets forth the procedure to be followed by the agency if it is unable to make the records immediately available.  RSA 91-A:4, IV(b) provides that, in these circumstances, the agency shall, within five business days of the Right-to-Know Law request: "(1) make such record available; (2) deny the request; or (3) provide a written statement of the time reasonably necessary to determine whether the request shall be granted or denied and the reason for the delay."  As we have stated, "the time period for responding to a Right-to-Know request is absolute."  ATV Watch v. N.H. Dep't of Resources & Econ. Dev., 155 N.H. 434, 440 (2007) (interpreting prior version of the statute).

In this case, Ryan emailed the plaintiff on July 7, 2021, within five business days of the request, stating that the defendants would need an additional 45 days to respond to Request No. 3.  Ryan emailed the plaintiff again on July 16, 2021, indicating that he still intended to provide documents responsive to Request No. 3 within the 45 days.

12

Thereafter, Ryan did not communicate with the plaintiff at all regarding Request No. 3, despite receiving an email from the plaintiff on August 23, 2021, reminding him of the 45-day deadline to respond to Request No. 3 and receiving another email from the plaintiff on August 27, 2021, asserting that the defendants were in violation of RSA 91-A:4. The plaintiff filed the Right-to-Know Law complaint on September 28, 2021, but documents responsive to Request No. 3 were not provided until after the hearing on the motion to dismiss. At no point did the defendants assert that they were not required to produce documents responsive to Request No. 3; they simply stopped responding to the plaintiff's inquiries and provided documents only after the trial court order setting a deadline for them to do so. Having provided the plaintiff with a statement of the time by which the defendants would provide a response to Request No. 3, the defendants were, at the least, obligated to respond to the plaintiff's subsequent inquiries about the production and explain why they were unable to meet the deadline and state how much more time would be required. Under these circumstances, we conclude that the lawsuit was necessary to make public information available. We also conclude that the defendants "knew or should have known" that they were in violation of RSA chapter 91-A. RSA 91-A:8, I. Accordingly, we conclude that the trial court erred when it denied the plaintiff's request for attorney's fees.

The defendants argue that the time it took them to respond to the plaintiff's Right-to-Know Law requests was not unreasonably long because they provided a prompt production of the documents responsive to Request Nos. 1, 2, 4, 5, 6, 7, and 8, and that, "with respect to the request for two years-worth of emails involving numerous 'SAU Officers' it simply took [defendants] longer." (Emphasis omitted.) We are not unsympathetic to the challenges faced by the defendants, particularly given that they were required to respond to this request while, in their words, they were in the midst of "one of the most challenging school years in modern history—dealing with the pandemic and the struggles of remote and hybrid learning." However, in ruling that the plaintiff is entitled to an award of attorney's fees, we do not conclude that the defendants took an unreasonably long time to produce the responsive documents. Rather, we conclude that having set a deadline for themselves of 45 days, it was incumbent upon them to respond to the plaintiff's subsequent inquiries after they failed to meet that self-imposed deadline.

In light of our conclusion that the trial court did not err in finding that the defendants had complied with the Right-to-Know Law with respect to Request Nos. 1, 2, 4, 5, 6, 7, and 8, the plaintiff is not entitled to recover any attorney's fees attributable to claims made regarding those requests. On

13

remand, the trial court shall award to the plaintiff only those attorney's fees incurred as a consequence of having to file a lawsuit to compel the production of documents in response to Request No. 3.

The plaintiff's request in his brief for an award of appellate attorney's fees and costs is denied without prejudice. The plaintiff may renew this request by filing a properly supported motion for appellate fees and costs with this court on or before December 7, 2023.

Affirmed in part; reversed in part; and remanded.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred; HOURAN, J., retired superior court justice, specially assigned under RSA 490:3, sat for oral argument but did not participate in the final vote, see N.H. CONST. pt. II, art. 78.

**Timothy A. Gudas,**
**Clerk**